1
2
3
4
5
6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

7

8

FRANCISCO MAGALLAN,

9
                              Plaintiff,

10

11      v.

12
MAYOR MICAH CAWLEY, POLICE
13  CHIEF DOMINIC RIZZI, R.
    URLACHER, C. GOCHA, T.
14  ADAMS, S. UPTON and JOHN/JANE
    DOE,
15

16
                              Defendants.
17

NO:  4:14-cv-05109-SAB

**ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

18
19
20
21
22
23
24
25
26
27
28

On October 20, 2015, all defendants filed a Motion for Summary Judgment, ECF No. 51, in the above-captioned matter. Plaintiff's responsive brief was due November 19, 2015. Plaintiff has not filed any responsive briefing. Defendants filed a reply on December 3, 2015. ECF No. 62. An in-person hearing on the motion was scheduled for December 9, 2015. The Court cancelled the in-person hearing and, on December 7, 2016, issued an Order to Show Cause as to why the Motion to Dismiss should not be granted in the absence of Plaintiff's response. ECF No. 63. Plaintiff has not responded to the order to show cause, filed a statement of material facts, or filed any discovery with the court.

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT # 1**

Under Local Rule 7.1, Plaintiff may be deemed to have consented to the grant of Defendant's motion for summary judgment. The Court is cognizant of the fact that Plaintiff is representing himself pro se and was recently incarcerated, however, it is Plaintiff's responsibility to keep his contact information up to date and Plaintiff was aware of the deadline for his responsive filing. ECF No.50. Plaintiff has had over eighty days to file a response to Defendants' Motion for Summary Judgment and had over thirty days to show cause for his failure to respond to the motion.

Additionally, under Fed. R. Civil Procedure 41(b), if a "plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." In this case, Plaintiff has failed to comply with the Court's Order to Show Cause. ECF No. 63. Defendants have not yet specifically moved for dismissal for Plaintiffs failure to comply with the Court's order.

Although the Court could arguably grant the motion for summary judgment under LR 7.1(d), the Court will address the motion on the merits, with the facts available in the record.

### *Facts*

On the night of October 20, 2012, Plaintiff was at a friend's house talking with his ex-girlfriend. Plaintiff had used both heroin and methamphetamine earlier in the day. Plaintiff—an admitted gang-member—accompanied a child to a store on bicycles. Plaintiff was in a neighborhood that is considered the territory of a rival gang. Plaintiff was shot at by a person wearing the rival gang's "colors" who had exited a nearby apartment. Then, he was shot at by three or four individuals who exited a car. Plaintiff was struck once in the lower leg. He managed to crawl a distance where several individuals assisted him. Plaintiff was bleeding "a lot" and described the pain as "horrible."

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT #** 2

One or more individuals called 911 to report the shooting. Yakima Police Department ("YPD") Officers Ryan Urlacher, Craig Gocha, and Tory Adams and YPD Sergeant Shelly Upton responded to the scene. Officer Urlacher was the first to arrive. It is YPD policy for police to arrive first at the scene of a shooting, assess the scene for safety, and then clear responding medical personnel to attend to any injured party when appropriate. The Yakima Fire Department ("YFD") and Advanced Life Systems ("ALS") follow the same staging policy and wait a few blocks from the scene until cleared to enter the area.

When Officer Urlacher arrived, Plaintiff was conscious, alert, yelling, and communicating. Officer Urlacher believed the shooting was gang-related, had his gun drawn, and ordered a crowd surrounding Plaintiff to move away. The Officer asked Plaintiff several questions such as who shot Plaintiff, if there were any weapons on the scene, how many shooters there were, where the shooters went, and if he had any other gunshot wounds. Plaintiff answered the questions. Plaintiff believes the officers were disrespectful and should have set up a better perimeter and taken more witness statements.

According to Defendants, when paramedics and firefighters arrived, they were immediately cleared to enter the scene and provide medical aid to Plaintiff. ALS and YFD received their dispatch at 12:20 a.m., the same time Officer Urlacher arrived at the scene. Both ALS and YFD arrived at 12:23 a.m. The staging process did not occur because YPD had already cleared them to enter the scene before they arrived. Sergeant Upton and Officer Gocha arrived at the scene at 12:22 a.m. Sgt. Upton believed that Plaintiff's wounds were not serious enough to warrant medical treatment prior to the medical personnel arriving on scene.

According to Plaintiff, before he received treatment, Officer Urlacher cut off the sweatshirt tied around his leg and said "it's not that bad." Plaintiff states Sgt. Upton said "stop being such a pussy." Although Defendants claim that medical personnel arrived within a few minutes of Officer Urlacher, Defendant

**ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT #** 3

believes it was fifteen minutes later. Additionally, Plaintiff believes he did not receive medical attention for between five and seven minutes after medical personnel arrived. Defendants allege it was medical personnel who removed the tourniquet in order to restore blood flow to Plaintiff's leg. A photograph depicts medical personnel removing Plaintiff's pant leg; the tourniquet is still visible on Plaintiff's leg at that time. Plaintiff believes that police photography delayed medical personnel in placing him in the ambulance. Plaintiff was in route to the hospital at 12:38 a.m. It is undisputed that YPD did not interact with medical personnel at the scene and that Plaintiff was never placed under arrest or told he could not leave.

Plaintiff and Sgt. Upton arrived at the hospital virtually simultaneously at 12:46 a.m. According to Plaintiff, Sgt. Upton asked hospital staff not to provide pain medication until after he could be questioned. Defendants deny this request occurred. Emergency room nurse Amy Laws administered a painkiller at 1:22 a.m. Laws explained that the delay between arriving at the hospital and receiving painkillers was due to the time it took to get an IV in place, get blood work done, ensure his condition was stable, obtain x-rays and ensure he did not have a life-threatening condition that could be affected by pain medication. Laws stated the seventeen minute delay between IV placement and the administration of pain medication was not atypical or abnormal. She also denies being asked to delay or not administer pain medication, she stated she has never allowed police to delay treatment of a patient, and she would have said "no" to such a request and noted it in treatment records had it occurred. Plaintiff says he received pain medication as soon as Sgt. Upton was finished questioning him. Sgt. Upton informed dispatch she was done at the hospital at 1:30 a.m.

### *Motion Standard*

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT # 4**

that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)). There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party has the burden of showing the absence of a genuine issue of fact for trial. *Celotex*, 477 U.S. at 325.

In addition to showing that there are no questions of material fact, the moving party must show that it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law if the non-moving party has failed to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### Analysis

Plaintiff's complaint consists of three primary claims. First, Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs by interfering with medical personnel and by refusing treatment for an unnecessary and prolonged amount of time. Second, Plaintiff alleges Officer Urlacher was negligent when he removed the sweatshirt from Plaintiff's leg. Third, Plaintiff states that Sgt. Upton was deliberately indifferent in "refusing to allow any pain medication to be administered" to Plaintiff until he answered questions.

**ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT # 5**

Because pro se Plaintiff did not submit a response brief and has not provided the legal argument for his claims, the Court will attempt to interpret his allegations through the relevant legal framework. Accordingly, the Court views Plaintiff's complaint as a § 1983 action alleging violations of his Fourteenth Amendment Due Process rights.

Ordinarily, the Fourteenth Amendment does not require law enforcement to provide medical assistance to private citizens when the citizen's injury was caused by a third party. *See Penilla v. City of Huntington Park*, 115 F.3d 707, 709 (9th Cir. 1997) (*citing DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189 (1989)); *see also Patel v. Kent School Dist.*, 648 F.3d 965, 968 (9th Cir. 2011).Two primary exceptions to this rule exist: the "special relationship" exception and the "state-created danger" exception. *Patel*, 648 F.3d at 968. The special relationship exception applies when the state, by affirmative exercise of its power, so restrains an individual's liberty that it renders him unable to care for himself—such as when an individual is incarcerated, institutionalized, or otherwise in state custody. *DeShaney*, 489 U.S. at 200. The state-created danger exception applies when the state affirmatively places an individual in danger by acting with deliberate indifference to a known or obvious danger. *Patel*, 648 F.3d at 971-72 (*citing L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996)).

In this case, there was no special relationship between Plaintiff and the state. Plaintiff acknowledged that he was never placed under arrest or told he could not leave. Although Plaintiff indicates he did not think he could leave, he could not articulate any justification for his belief other than that he desired the medical treatment from medical personnel. Defendants all indicate Plaintiff was never under arrest or in custody. Additionally, undisputed records indicate Sgt. Upton left the hospital by 1:30 a.m. There is no evidence in the record that any other law enforcement remained at the hospital after that time. Accordingly, the Court finds that, even viewing the evidence in the light most favorable to Plaintiff,

**ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT # 6**

no special relationship existed between Plaintiff and the state that so restrained his liberty that it rendered him unable to care for himself.

Similarly, the state-created danger exception does not apply in this case. Plaintiff alleges that law enforcement took three relevant affirmative actions: (1) cutting the sweatshirt off his leg; (2) delaying medical personnel from treating him; and (3) delaying hospital personnel from administering pain medication. The Court must ask if a reasonable juror could conclude that these actions constitute deliberate indifference to a known or obvious danger. First, although Plaintiff alleges Officer Urlacher cut off the sweatshirt from Plaintiff's leg, it is undisputed that a belt remained on Plaintiff's leg serving as a tourniquet. Further, medical personnel even removed the remaining tourniquet in order to restore blood flow to the leg. There is no evidence in the record that could permit a jury to find Officer Urlacher acted with deliberate indifference by cutting the sweatshirt off Plaintiff's leg or that doing so caused any injury. Second, although Plaintiff alleges in his deposition that law enforcement delayed medical personnel from treating him for five to seven minutes, he concedes it was reasonable for officers to want to ensure the scene was safe and secure before allowing paramedics to reach him. The record is devoid of any facts that would permit a jury to conclude that any minimal delay that may have occurred in allowing Plaintiff's treatment was the product of deliberate indifference. Third, Plaintiff believes that Sgt. Upton delayed the administration of pain medication at the hospital until she had questioned him. Again, the record does not indicate that Sgt. Upton actually interfered with the administration of pain medication, instead, the record shows that no hospital personnel were instructed to delay medication and that medication was administered in the ordinary course of care. Additionally, even had Sgt. Upton slightly delayed Plaintiff's treatment, this alone would be insufficient under a deliberate indifference standard. Therefore, Plaintiff's claims do not fall under the state-created danger exception to the standard set out by *DeShaney*.

**ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT #** 7

The Court may only rule on a case as it is presented to it. Here, the paucity of evidence—even when viewed in the light most favorable to the plaintiff—would not allow a reasonable juror to find Defendants liable under § 1983. Defendants' motion for summary judgment is granted in full.

Accordingly, **IT IS ORDERED:**

1. Defendants' Motion for Summary Judgment, ECF No. 51, is **GRANTED**.
2. Judgment shall be entered in favor of all defendants.
3. All previously set court dates, including the trial date, are **STRICKEN**.
4. Any pending motions are **denied as moot**.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this Order, enter judgment, provide copies to counsel and Plaintiff, and **close the file**.

**DATED** this 11th day of January 2016.

Stanley A. Bastian
United States District Judge

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT # 8**